## Merchants' Building Improvement Co. v. Chicago Exchange Building Co.

1. ,CORPORATIONS—*Office Building Company May Contract for Location of Another Building to Increase Value of its Own Quarters—Ultra Vires.*—It is not *ultra vires* the power of a corporation having authority to own and operate a large building, substantially all of which is rented by it to tenants of various occupations, to enter into a contract for the location of a proposed building where it would increase the value of its office quarters.

2. CONTRACTS—*Substantial Compliance Sufficient.*—Substantial compliance with the terms of a contract is sufficient to warrant a recovery.

**Assumpsit.**—Error to the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902. Affirmed. Opinion filed February 13, 1903.

HECKMAN, ELDSON & SHAW and PECK, MILLER & STARR, attorneys for plaintiff in error.

JOHN S. COOPER, CHARLES M. OSBORN and CHARLES M. OSBORN, JR., attorneys for defendant in error.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

This case has been here before; the opinion of the court upon a former hearing appears in 83 Ill. App., at

18        APPELLATE COURTS OF ILLINOIS.

VOL. 106.] Merchants' Bldg. Imp. Co. v. Chicago Exch. Bldg. Co.

page 241. By whatever was determined by the judgment of the court upon the former hearing, we are now bound. It was in such former hearing determined by this court that the contract set forth upon page 242 of volume 83 of the Appellate Court Reports, upon which this suit is brought, was in and by itself an independent agreement, and that the receipt set forth upon page 243 of the same volume does not on its face purport to cast upon the owner or owners of the premises described in said contract, to whom it runs, any duty or obligation.

Upon the last hearing there was evidence to the effect that at the time the said contract was delivered to Clarence I. Peck, the receipt set forth upon page 243 was by him delivered to Wallace Heckman, secretary of the Merchants' Building Improvement Company.

It appears that after the making of said contract and the delivery of said receipt, the four persons doing business under the name of the estate of P. F. W. Peck, caused to be created the corporation by which this suit was brought, the defendant in error, and that in pursuance of said contract a building was erected upon the property described therein, and the Chicago Stock Exchange induced to take a lease thereof at the nominal rental of $1 per annum, for the term of fifteen years from May 1, 1894; that by said lease there was given to said Stock Exchange for its use, not merely the 6,000 feet required by the said contract, but more than 12,000 square feet.

As before held by this court the contract in effect ran to whomever should perform the conditions upon which the payments promised by the plaintiff in error were to be made.

Appellant insists that the obligation by it entered into was a mere technical one. We do not regard it as technical in any other sense than a promissory note, a deed or a mortgage may be said to be technical. The promise was conditioned upon things requiring the expenditure of a great sum of money, and the donation to the Stock Exchange of the use of premises of great rental value. Whether the plaintiff in error has received from the location of said

CHICAGO—FIRST DISTRICT—A. D. 1903.    19

Merchants' Bldg. Imp. Co. v. Chicago Exch. Bldg. Co.

Stock Exchange across the street directly opposite its own building, as much in the way of advantage and profit as it expected, is not known.   It has succeeded in obtaining the performance of the conditions for which it stipulated; whether by such performance it has gained more or less than its promised payment of $2,500 per annum, is immaterial; nor do we regard the undertaking of plaintiff in error as *ultra vires.*

If a company incorporated for the purpose of operating a hotel may make a valid contract to pay a large sum of money in order to secure the temporary location of a military encampment in the city in which the hotel is, we see no reason why the plaintiff in error, having authority to own and operate a large building, substantially all of which was rented by it to tenants of various occupations, might not enter into the contract under consideration for the purpose, as therein manifest, of making more valuable the quarters it had to rent.   Richelieu Hotel Co. v. Military Encampment Co, 140 Ill. 263–264.

As before stated, the conditions mentioned in the contract under which plaintiff in error was to pay the sum it promised, were performed by a corporation organized by the parties doing business under the name of Estate of P. F. W. Peck, by whom the receipt mentioned was given. We think it substantially appears that such corporation had knowledge of the terms of said receipt, and we think it also appears that plaintiff in error had, prior to May 1, 1893, notice that the contract made by it was by the expenditure of a large sum of money being acted upon and that the advantage it sought by its promise of making the payments provided for, was being attained by the setting aside of more than six thousand square feet of space for the use of said Chicago Stock Exchange, and that it had been agreed that a lease should be made to said Exchange in accordance with the conditions of said contract.   The erection of the great building upon the southwest corner of Washington and LaSalle streets, great space in which was reserved and had been agreed to be occupied by the Chi-

cago Stock Exchange, as well as the providing in said building a main entrance from Washington street to the Stock Exchange room therein to be located, were matters not only of public notoriety but which the officers and agents of plaintiff in error could hardly fail to take notice of as they went in and out of its building. We do not understand the officers of plaintiff in error to testify that they did not, prior to May 1, 1893, know these things, but that they had to them given no formal notice of the execution of the written contract binding the Chicago Stock Exchange to occupy said premises in accordance with the terms of the said contract of subscription. We do not regard the stipulation for the giving of notice prior to May 1, 1893, as requiring a formal notice. The substantial matters required by the "receipt" were the performance of the "certain conditions" referred to therein and the making of a "written contract binding upon the Chicago Stock Exchange to occupy said premises in accordance with the terms of the subscription." There is no claim that the plaintiff in error suffered any damage because of lack of notice of the making of such contract. There has been a substantial compliance. That is sufficient to warrant a recovery. Parsons on Contracts. Vol. 2, 6th Ed., p. 659–660.

Plaintiffs in error make complaint that the proposition made to the Stock Exchange for the use of said premises required that the co-operation and good-will of the influential members of such Exchange should be given toward securing desirable tenants in the Stock Exchange Building. Whatever proposition of that kind may have been made, none such, nor any agreement of that kind, is contained in the lease actually made by the defendant in error to the Chicago Stock Exchange.

Plaintiff in error has not by such mere proposition been deprived in any way of any portion of the gains and profits it expected to make by the performance of the conditions contained in its contract of subscription.

Finding no error requiring a reversal of the judgment in this case, it is affirmed.